United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT M. HALL, RAY DELL'ORFANO AND ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>  v.<br><br>IKON OFFICE SOLUTIONS, INC.,<br><br>    Defendant.<br>_____ / | No. C 05-01036 WHA<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF SCOTT M. HALL AND GRANTING DEFENDANT'S MOTION TO TRANSFER** |

### INTRODUCTION

In this employment dispute brought under the Fair Labor Standards Act of 1947, 29 U.S.C. 207 *et seq.*, defendant IKON Office Solutions, Inc. moves for summary judgment as to plaintiff Scott Hall. In addition, defendant IKON seeks to transfer the action to the Middle District of Georgia pursuant to 28 U.S.C. 1404(a). Both motions are now granted.

### STATEMENT

Plaintiffs filed this class action on March 11, 2005. Plaintiffs' amended complaint alleges that IKON failed to pay overtime wages in violation of the Fair Labor Standards Act. Plaintiff Hall seeks relief on behalf of himself and similarly situated employees of IKON in California between September 26, 1997, and March 7, 2000, for failure to pay overtime wages, hourly pay and other compensation in compliance with the FLSA. Plaintiff Dell'Orfano seeks relief on behalf of himself and similarly-situated employees of IKON in the United States, excluding California, from April 2003 to the present, for the same relief (Amend. Compl. ¶ 13).

1   (The mismatch in dates is due to a parallel state-court action by the same plaintiffs' counsel for

2   the of period March 8, 2000, to the present, as to California-hired employees.)

3       Hall is a resident of California and was employed by IKON in San Francisco between

4   1999 and 2000.  Dell'Orfano is a resident of Florida and has been employed by IKON in

5   Florida since 2003.  IKON is an Ohio incorporation with its principal place of business in

6   Malvern, Pennsylvania.  IKON does business in California.  Calculations and processing of

7   payroll and overtime, however, takes place in IKON's corporate offices in Macon, Georgia.

8       In 2002, the Mission Valley location of the San Diego office of IKON was audited by

9   the San Diego District Office of the Department of Labor.  The investigation covered IKON's

10  operations in San Diego between September 26, 2000 and September 26, 2002.  As a result of

11  the investigation, the DOL concluded that IKON had underpaid 47 employees overtime.

12  Consequently, IKON agreed to resolve the underpayment issue by entering into a Back Wage

13  Compliance and Payment Agreement with the DOL, dated November 13, 2002.  The scope of

14  this agreement is the single issue relevant to deciding this summary judgment motion.

15      The parties disagree over the meaning of paragraph 7 of the agreement:  "The employer

16  hereby waives all rights and defenses which may be available by virtue of the statute of

17  limitations, including but not limited to section 6 of the Portal-to-Portal Act (29 U.S.C. 255)"

18  (Decl. Chidlaw, Exh. 1 ¶ 7).  Defendant argues that the waiver applied to only the 47 employees

19  covered by the agreement that worked at the Mission Valley location of IKON in San Diego.

20  Plaintiffs reply that the waiver of statute of limitations "is not limited in any way, either with

21  respect to IKON employees or periods of employment" (Opp. Mot. S.J. at 5).  Plaintiffs, in

22  effect, argue that IKON waived any and all statute of limitations as to all employees nationwide,

23  from here to eternity.

24      Defendant argues that the agreement, on its face, supports IKON's position that the

25  waiver of statute of limitations applied only to the 47 Mission Valley employees.  The

26  agreement stated that "[a]s a result of [the] investigation monetary violations were found

27  resulting in 47 employees due back wages in the amount of $7,042.66" and then went on to say

28  that "[t]he employer agrees to pay the back wages due the employees in question in the amounts

shown for the periods indicated on the Summary of Unpaid Wages attached hereto and made a part hereof" (Decl. Chidlaw, Exh. 1 ¶ 2).  Appended to the agreement was a three-page summary of unpaid wages with the names and addresses of each of the 47 individuals due payments under the agreement.  At the bottom of each of the pages of the summary of unpaid wages is the following statement signed by Maria DeSantis, the Senior Human Resources Representative for IKON:

> I agree to pay the listed employees the back wages shown due and to mail proof of payment to the Wage and Hour District Office shown above by 12/10/02.

In reply, plaintiffs point to the following language in the agreement to support their position that the waiver of the statute of limitations of the FLSA was applicable nationwide, universally, from then to eternity: "[t]he employer represents that it will immediately come into full compliance with all applicable provisions of the Fair Labor Standards Act, and will continue to comply therewith in the future" (*id.* ¶ 1).  In addition, plaintiffs ask for time to conduct discovery to determine the intent of the parties regarding the statute of limitations waiver (Opp. Mot. S.J. at 6).

**ANALYSIS**

The statute of limitations for an alleged violation of the Fair Labor Standards Act is two years.  The statute of limitations is extended to three years if the trier of fact determines that the violation was "willful." *See* 29 U.S.C. 255(a)*; see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

This order holds that defendant IKON has met its burden in showing that there is no genuine issue as to any material facts with regard to plaintiff Hall's claims and that defendant is entitled to a judgment as a matter of law as to Hall.  Hall seeks to recover for alleged violation of the FLSA between 1997 and 2000; yet, he filed this complaint in 2005, well outside even the three-year limitations period.  Therefore, his claims are barred unless he can establish that the statute of limitations was tolled for his claims.

Hall has advanced no evidence that the statute of limitations was tolled for Hall's claim. On its face, neither the agreement nor the waiver in the agreement was applicable to Hall.  The

3

1  agreement applied to 47 named individuals working at the IKON Mission Valley location in
2  San Diego during a set period of time. Plaintiff Hall never worked in the San Diego office; he
3  worked in the San Francisco office. The agreement was a result of an audit conducted in 2002
4  that covered IKON's operations in San Diego between September 26, 2000 and September 26,
5  2002. Hall's employment, however, ended with IKON in March 7, 2000 — six months before
6  the audit began.

      Moreover, the agreement was clearly only applicable to the 47 named-employees, found due back-pay as a result of the San Diego audit. The 47 employees were listed on an appendix to the agreement. Hall was not one of those named individuals. Clearly, the agreement was applicable to this limited group. In paragraph 2, IKON agreed "to pay the back wages due the employees *in question* in the amounts shown for the period indicated on the Summary of Unpaid Wages attached hereto and made a part hereof" (emphasis added). Throughout the agreement, the parties implicitly referred back to the 47 "employees in question" regarding default payments, residuals, interest and penalty payments (emphasis added):

- In Paragraph 3, IKON agreed "to pay directly to *the employees* the amounts due . . ."
- In Paragraph 4, IKON agreed "to provide the Secretary's representative with listing of *all unlocated employees* . . ."
- Paragraph 5 stated that "[i]n the event that *any employees* cannot be located, or refuse to accept the back wages, the employer agrees to deliver . . . cashier's or certified check . . . to cover the total net due *all such employees* on or before 02/27/03."
- Paragraph 5 also stated that "after three years, any monies which have not been distributed because of inability *to locate the proper person* or because of refusal to accept payment shall be covered into the Treasury of the United States as miscellaneous receipts."

Given this context, paragraph 7, regarding the waiver of the statute of limitations, was clearly facilitating the collection of back-pay as to the 47 named employees.

4

True, paragraph 7, read alone, was not limited with respect to IKON employees or periods of employment. This paragraph, however, must be read in the context of the agreement as a whole. It makes no sense to read this statement to mean that the employer waived all rights and defenses, which may be available by virtue of the statute of limitations, to employees nationwide, from here to eternity, when the surrounding provisions clearly were only applicable to the 47 "employees in question." For example, paragraphs 8 and 9, regarding default payments, were clearly facilitated by paragraph 7. As a result of the waiver of the statute of limitations, in the event of default, the 47 employees may assess interest and penalties on the back-wages due and the DOL may pursue additional collection actions.

This order finds that the agreement can not possibly sustain (with or without extrinsic evidence) the interpretation that plaintiffs are suggesting. A fundamental principal of contract law is that a contract should not be construed so as to reach an absurd result. It would be an absurd result for paragraph 7 of the agreement to have waived any and all statute of limitations, including but not limited to claims nationwide, from here to eternity. Under plaintiff's construction, this same lawsuit could have been commenced a decade from now without bar. The only reasonable interpretation is that the waiver operated to facilitate enforcement as to the 47 employees who were subject to the Back Wage Compliance and Payment Agreement. Since the contract was with a federal agency, federal common law would govern its construction. Counsel wholly ignored this point. No authorities have been provided contrary to the above analysis.

Based on the foregoing, this order finds that there is no genuine issue as to any material fact and IKON is entitled to judgment as a matter of law with respect to Hall's claims and those similarly situated. The Rule 56(f) application is denied because plaintiff has not shown any possibility of discovery to overcome the foregoing facial meaning of the waiver. In this connection, this order does *not* rely on any of the extrinsic evidence provided by defendent, so there is no need to depose the declarants.

5

**2.    MOTION TO TRANSFER CLAIMS**

With the case trimmed down to size, IKON also moves this Court to transfer the action to the Middle District of Georgia pursuant to 28 U.S.C. 1404. For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district of division where it might have been brought. 28 U.S.C. 1404(a). Under Section 1404(a), the district court has discretion "to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Steward Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1998). Factors that a court may weigh in any individual case include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The moving party bears the burden of showing that an action should be transferred. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

As plaintiffs correctly point out, Section 1404(a) contemplates transfer of an entire action. Having resolved summary judgment in favor of defendant as to Hall, this order finds, for the reasons stated below, that convenience and judicial economy warrant transfer of action to the Middle District of Georgia.

In its amended complaint, plaintiffs established jurisdiction in the Northern District of California for Dell'Orfano's claim (and those similarly situated) by asserting that all the claims arose from the same and similarly situated facts and circumstances and by asserting pendant jurisdiction to plaintiff Hall's claims (Compl. ¶1). Having eliminated Hall's claim, this order finds that IKON has met its burden of showing that a change of venue is warranted under Section 1404(a). Absent the claims brought by Hall, nothing in the remaining amended complaint significantly connects the claim to California.

6

*First*, the remaining parties have no contact with California. This action seeks relief by "persons employed by IKON in the United States between September 26, 1997 *(excluding California employees)* and the present, paid overtime wages, hourly pay, and other compensation in a single pay period" (see Amended Compl. ¶ 13 (emphasis added)). Specifically, Dell'Orfano is a resident of Florida and alleges he was employed by IKON in West Palm Beach, Florida. He has not had contact with California during the course of his employment with IKON. In addition, as mentioned, Dell'Orfano brings this case individually and on behalf of other similarly situated, and the class of plaintiffs is defined in the amended complaint as employees *outside of California*. Litigating this case in Georgia will be much more convenient for Dell'Orfano than litigating in California. Neither does defendant have significant contact with California. While IKON does business in California, it is an Ohio corporation with its principal place of business in Malvern, Pennsylvania.

*Second*, the cause of action is not connected to California. The facts underlying Dell'Orfano's allegation that IKON failed to pay him overtime wages and failed to include all of his compensation when calculating his regular rate-of-pay for those overtime wages are not connected to California. As mentioned, Dell'Orfano received his compensation in Florida. The calculation and processing of his compensation took place in IKON's corporate administrative office in Macon, Georgia.

*Third*, the convenience of the witnesses favors transfer. None of the witnesses lives in California. Rather, most, if not all, of the material witnesses reside and work east of the Mississippi.

*Fourth*, documents relevant to the claims are not located in California. Defendant has shown that the most relevant documents, such as payroll records and documents reflecting the calculation of regular rate-of-pay, as well as witnesses with knowledge of these documents are located in the Middle District of Georgia (Def. Br. at 9).

*Fifth*, the Court must also consider which forum is most familiar with the applicable law. This case concerns the application of the FLSA. Therefore, the Middle District of Georgia is in the same position as the Northern District of California to decide the case.

7

*Sixth*, the Court must consider plaintiff's choice of forum. While ordinarily a plaintiff's choice of forum is given deference, when the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, the courts afford the plaintiff's choice minimal value. *Pacific Car and Foundry Co.*, 403 F.2d 949, 954 (9th Cir. 1968). Here, the facts underlying Dell'Orfano's claims did not take place in California, plaintiffs' selected forum; therefore, this order affords plaintiffs' choice of the Northern District minimal weight in determining whether transfer is appropriate.

Considering all these factors, this order concludes that defendant has met its burden of showing that a change of venue is warranted under Section 1404(a).

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment as to plaintiff Scott M. Hall **IS GRANTED**. Defendant's motion to transfer the case **IS ALSO GRANTED**. The clerk **SHALL TRANSFER** the file to the United States District Court for the Middle District of Georgia and shall close the file in this court.

**IT IS SO ORDERED.**

Dated: July 8, 2005.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8